**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA, for the**
**use of WCA CONSTRUCTION, LLC,**

      **Plaintiff,**

**v.**                                                  **2:25-cv-00885-DHU-GBW**

**C.A.R.P.I., USA, INC. and FEDERAL**
**INSURANCE COMPANY,**

      **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court upon Defendants C.A.R.P.I, USA, Inc. ("CARPI") and Federal Insurance Company's ("Federal") (collectively "Defendants") Motion to Dismiss, or Alternatively, to Stay Plaintiff WCA Construction, LLC's ("WCA") Complaint. Doc. 12. Having considered the parties' briefs and the applicable law, the Court denies Defendants' motion to dismiss and grants their motion to stay.

### I.    BACKGROUND

This action concerns WCA's recovery under a payment bond brought pursuant to the Miller Act, 40 U.S.C. § 3131, et seq. Disputes have arisen between the parties involved in a construction project located at the El Vado Dam about 160 miles north of Albuquerque, New Mexico.

The Miller Act requires recipients of certain government construction projects to obtain a performance bond and a payment bond. The Act allows suppliers of labor and materials to bring civil actions on the payment bond for any amount unpaid after they complete their contractual obligations. 40 U.S.C. § 3133(b)(1); *see U.S. ex rel. A & R Supply of Mississippi v. Travelers Cas. & Sur. Co. of America*, 265 Fed.Appx. 236, 238, 2008 WL 345529, 2 (5th Cir. 2008). The Act's purpose is to "protect those who furnish labor and material for public construction and to insure

1

that they will be paid for the same." *Graybar Elec. Co. v. John A. Volpe Constr. Co.*, 387 F.2d 55, 58 (5th Cir. 1967) (quoting *St. Paul-Mercury Indem. Co. v. United States for Use of H.C. Jones*, 238 F.2d 917, 921 (10th Cir. 1957)).

CARPI entered into Prime Contract Number 140R4020C0002 (the "Prime Contract") with the U.S. Bureau of Reclamation (the "Bureau") to construct the El Vado Seepage Reduction Modification to Dam (the "Project")."[1] Doc. 1 at ¶ 8; Doc. 13 at 3. Pursuant to 40 U.S.C. § 3131, CARPI, as principal, and Federal, as surety, executed a bond for the prompt payment of all persons supplying labor and materials used in carrying out the Project. *Id.* at ¶ 9.

In connection with CARPI's performance of the Prime Contract, in February 2022, CARPI entered into a subcontract agreement (the "Subcontract") with WCA, whereby WCA agreed to perform various earthwork and concrete work on the Project. *Id.* at ¶ 10. Under the Subcontract's disputes provision, WCA agreed to be bound "to [CARPI] to the same extent that [CARPI] is bound to [the Bureau] by the terms of the Prime Contract and by any decision or determination made by [the Bureau], [the Bureau's] representative, board, court, arbitration panel, or other tribunal to the extent that the work of [WCA] is involved." *Id.* at 38. WCA also agreed that if it filed a Miller Act suit against CARPI, Federal, or both, it must, "upon [CARPI's] good faith request, consent to a stay of such suit or action pending the exhaustion of the procedures for the resolution of disputes under the Prime Contract." *Id.* The Subcontract clarified that WCA's compliance with this process "shall not be deemed to be a waiver of its Miller Act rights." *Id.* at 39.

---

[1] The Prime Contract is not in the record.

On May 17, 2024, the Bureau terminated the Prime Contract for its convenience.[2] Doc. 13 at 4. On May 22, 2024, CARPI provided WCA with notice of the Bureau's termination of the Prime Contract. *Id.* at 5. On May 1, 2025, CARPI submitted a termination settlement proposal to the Bureau, which included the "contract closeout termination proposal" that WCA submitted to CARPI on June 24, 2024.[3] *Id.* CARPI's termination settlement proposal remains pending with the Bureau. *Id.*

The Complaint alleges that CARPI and Federal have failed to pay WCA in full for the work provided pursuant to the Subcontract. Specifically, WCA alleges that it is owed at least $1,279,398.63 for the value of the labor, services, materials, equipment, and supplies furnished by it to the Project. *Id.* at ¶ 14. CARPI contends that despite it making a good faith request that WCA stay this action pending the resolution of the termination proposal with the Bureau, WCA refused to consent to a stay. Doc. 13 at 6.

## II.    DISCUSSION

### a.  Dismissal

Defendants argue that the Complaint fails to state a claim for which relief can be granted because "WCA's claims are already pending before the Contracting Officer as part of the federal claims process." Doc. 13 at 7.

---

[2] Federal Acquisition Regulation 52.249–2, which was incorporated by reference into the Subcontract, provides for termination for convenience of the government. Under this regulation, the government "may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249–2(a).

[3] When a contract is terminated for the convenience of the government, the contractor may submit a termination settlement proposal. FAR § 52.249–2(e), 48 C.F.R. § 52.249–2(e). A settlement proposal is "a proposal for effecting settlement of a contract terminated in whole or in part, submitted by a contractor or subcontractor in the form, and supported by the data, required by this part." FAR § 49.001, 48 C.F.R. § 49.001.

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The complaint's sufficiency is a question of law, and, when considering a Rule 12(b)(6) motion, a court must accept as true all of the complaint's well-pled factual allegations, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

At this early stage of litigation, the Court cannot definitively say that WCA has failed to state a claim that is plausible on its face. Defendant's argument for dismissal relies on matters outside the pleadings, namely the ongoing settlement negotiations with the Government. The outcome of these negotiations will potentially precipitate further legal and factual development. *See Naranjo v. Victor*, 625 F. Supp. 3d 1140, 1147 (D. Colo. 2022) ("[T]he Court finds that such an argument requires further factual development and is improper for considering a Rule 12(b)(6) motion.").

Accordingly, Defendants' motion to dismiss is denied.

### b. Stay of Proceedings

As an alternative to dismissal, Defendants request a stay, arguing that "WCA explicitly agreed to immediately stay any Miller Act action initiated prior to the completion of the disputes process." Doc. 13 at 8.

This Court has broad discretion to stay proceedings incident to its power to manage its docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see Baca v. Berry*, 806 F.3d 1262, 1269 (10th

4

Cir. 2015) ("the district court has the power to stay proceedings before it and to control its docket for the purpose of economy of time and effort for itself, for counsel, and for litigants"). Whether to issue a stay is a balancing test within the district court's discretion, assessing a party's interest in a stay against the harm of a stay. *Jones*, 520 U.S. at 706-08.

Section 11.2 of the Subcontract, which is necessarily embraced by the Complaint, requires WCA to "consent to a stay" of any suit or action it brings under the Miller Act pending "the exhaustion of the procedures for the resolution of disputes under the Prime Contract." Doc. 1 at 38. Defendants seek to enforce that provision, which they contend will promote judicial economy and avoid the possibility of inconsistent judgments. Doc. 13 at 12. In support, they cite a half dozen cases to show that courts routinely stay Miller Act suits when such an unambiguous stay provision applies. *See, e.g., United States v. Dick/Morganti*, 2007 WL 3231717, at *2 (N.D. Cal. Oct. 30, 2007) ("[W]here the unambiguous language of a subcontract provides for a stay, enforcing that language does not contravene the purposes of the Miller Act."); *United States for use & Benefit of Kingston Env't Servs., Inc. v. David Boland, Inc.*, 2017 WL 3763519, at *7 (D. Haw. Aug. 30, 2017) (listing cases). The Court agrees with Defendants. While WCA may claim that it does not see the purpose of a stay, it expressly agreed to the stay provision in the Subcontract and does not give a compelling reason why the Court should not require WCA to hold up its end of the bargain.

Accordingly, the Court finds that these circumstances warrant a stay.[4]

---

[4] The parties disagree over whether WCA's claim for $52,597.64 from CARPI remains pending with the Bureau, and thus, whether "all of WCA's claims raised herein will be adjudicated by the Government by way of the pending Termination Settlement Proposal as part of the claims process that has already been initiated." Doc. 13 at 8. The Court need not address this dispute because, in line with Defendants' reasoning, it finds that the case should be tried altogether as opposed to in a piecemeal fashion. *See Kerr v. U.S. Dist. Court for Northern Dist. of California*, 426 U.S. 394, 403 (1976) ("More importantly, particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation.").

### III.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss and **GRANTS** Defendants' motion to stay. The case is **STAYED** pending the exhaustion of the dispute resolution procedures outlined in the Prime Contract.

**IT IS ORDERED** that the parties notify the Court within fourteen days of the exhaustion of those procedures and, until then, file a joint status report every ninety days beginning August 10, 2026.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE